

SO ORDERED.

SIGNED this 8th day of June, 2015.

_____
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Christy Marie Ready | ) | Case No. 15-50155 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| _____ | ) | |

## ORDER AND OPINION OVERRULING OBJECTION AND CONFIRMING PLAN

THIS MATTER came before the Court for hearing on May 20, 2015, after due and proper notice, upon the Objection to Confirmation of Chapter 13 Plan and Request for Hearing (the "Objection") filed by Patrick Ready ("Mr. Ready"), the ex-husband of Christy Marie Ready (the "Debtor").  John A. Meadows appeared on behalf of the Debtor, Stacy C. Cordes appeared on behalf of Mr. Ready, and Kathryn L. Bringle appeared in her capacity as Chapter 13 Trustee at the hearing. After careful review of the proposed plan of the Debtor, the evidence offered at the hearing, and other matters of record, the Court makes the following findings of fact and conclusions of law:

**BACKGROUND**

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on February 21, 2015. The Debtor previously filed a Chapter 7 petition on February 7, 2008, in the United States Bankruptcy Court for the Western District of North Carolina (Case No. 08-30234). She received her discharge in that case on May 19, 2008. Pursuant to 11 U.S.C. § 727(a)(8) the Debtor is not eligible to file another Chapter 7 case, and receive a discharge in that case, within eight years of the commencement of her previous case.[1]

The Notice and Proposed Order of Confirmation was filed in this Chapter 13 case on April 10, 2015 (the "Proposed Plan"). According to the Debtor's Form 22C-1, she has below median income in the amount of $2,779.78 per month. The Proposed Plan provides a plan payment of $100.00 per month, an estimated 1% dividend to general unsecured claims, and a minimum term of 36 months. A 2013 Kia Optima is being released to Kia Motors Finance under the Proposed Plan. There are two other "special provisions" in the Proposed Plan: (1) the Debtor is purchasing a 2010 Chevy Equinox from Karl Roe and is making payments directly to the lienholder who financed the purchase; and (2) the Debtor proposes to classify any timely filed claim by Patrick Ready, listed on the petition as a debt of $56,575.00 based on a property settlement, as a general unsecured claim.

In her Schedules the Debtor shows no real property and $10,683.00 in personal property. The bulk of her personal property is listed as $4,092.00 in 2014 income tax refunds and $5,841.00 in "back child support (under appeal)." The Debtor has scheduled one priority debt in Schedule E as $290.00 owed to Mecklenburg County Tax Collector for 2014 property taxes.

---

[1] **11 U.S.C. § 727 Discharge**
　(a)　The court shall grant the debtor a discharge, unless –
　　　(8) the debtor has been granted a discharge under this section… in a case commenced within 8 years before the date of the filing of the petition;

2

The Debtor lists $142,962.37 in debt on Schedule F for creditors holding unsecured nonpriority claims.  The largest unsecured claims are as follows:  Patrick Ready, property settlement, $56, 575.00; Kia Motors Finance, deficiency on 2013 Kia Optima lease – Judgment 14-CVS-22089, $34,660.90; and Navient, student loan, $20,664.00.  The remaining unsecured debt of approximately $30,000.00 consists of fees for legal services, personal loans from the Debtor's father and brother, and credit card debt.

Mr. Ready filed the Objection on the basis that the Proposed Plan was not filed in good faith as required by 11 U.S.C. § 1325, stating that the Debtor filed her current case in order to avoid paying amounts due him under a Consent Order Regarding Payment of Arrears on Mortgage and Other Expenses dated September 27, 2013.  At the confirmation hearing on May 20, 2015, the Debtor testified that she and Mr. Ready were married for ten years, beginning in October, 1994.  They had one son in August, 2002 who has special needs and requires numerous medical appointments.  In addition, he was in a serious car accident in 2011 which required surgeries and additional medical appointments.  Since her divorce, the Debtor has worked at least five different jobs, some of which were part-time, as well as having her own cleaning business for a time. She has been unable to maintain steady employment for a variety of reasons. One employer, a wine company, went out of business while another employer, a cleaning service, "got in trouble with the law" so the Debtor quit. The Debtor was laid off from a position in chemical sales, and she lost several other jobs due to the amount of time she was devoting to caring for her son and her other personal issues. She also received unemployment benefits for a period of time.

In connection with the divorce, a Consent Judgment dated October 30, 2006 ("Divorce Consent Judgment"), provided, in part, that the Debtor would have exclusive possession of the

former marital residence located at 5421 Waverly Lynn Lane, Charlotte ("Waverly property") and have the responsibility of the first and second mortgages and all other debt and upkeep related to that property.  In addition, the Debtor was to use her best efforts to refinance the indebtedness on the Waverly property within two years of execution of the Consent Judgment, and if it had not been done within three years, the property placed for sale.

       The Debtor had trouble refinancing the mortgages due to her bankruptcy in 2008, and Mr. Ready agreed to allow her to refinance the Waverly property after the time limit specified in their Divorce Consent Judgment.  The Debtor struggled financially subsequent to the divorce, property taxes were unpaid after the divorce, and mortgage payments increased as a consequence.  The first mortgage loan was in special forbearance for a period of time when Mr. Ready was on active duty in Afghanistan with the Nevada National Guard.  Based on the Debtor's testimony and Debtor's exhibits 5, 6, 7, and 9, Mr. Ready did not cooperate in the attempted refinancing by the Debtor in September, 2011 during his active duty service, or with the Debtor's attempt at a loan modification. Specifically, Debtor's exhibit 6 is correspondence from the Debtor's loan officer to Mr. Ready indicating that the Debtor had "been approved for an FHA mortgage consolidating both first and second mortgages. In order to do this, your signature will be required on the deed."  Debtor's exhibit 9 is a Memorandum of Record (the "Memorandum") written by Russell B. Niemyer, 1LT, JA, Attorney -Advisor of the North Carolina National Guard which summarizes the assistance the North Carolina National Guard provided to the Debtor. Specifically, the Memorandum reflects that Lt. Neimeyer reviewed the divorce decree, spoke to loan officers, and through demand emails, tried to convince Mr. Ready to sign the quitclaim deed.  The Memorandum concludes that the Debtor "utilized all the sources

the military could provide to assist her in contacting and trying to secure Mr. Ready's compliance with the consent order."

The failure of the Debtor to keep the first and second mortgage payments current as provided in the Divorce Consent Judgment resulted in a Contempt Order (the "Contempt Order") that was entered on April 16, 2013 in Mecklenburg County District Court, finding that the Debtor was in criminal/civil contempt of the Divorce Consent Judgment. In the Contempt Order, the state court found, among other things, that "instead of focusing on securing employment she focuse[d] on the minor child. While the Court is sympathetic, there are plenty of single parent litigants with children with disabilities who work." The Contempt Order also included a finding that the Debtor had the ability to pay both the first and second mortgages while Mr. Ready was paying her $1,400.00 in child support, especially when she continued to pay her $463.00 per month lease on her Lexus.

After the Debtor was unable to refinance the Waverly property under the terms of the Contempt Order, the Debtor moved out of the Waverly property and deeded the Waverly property to Mr. Ready. Mr. Ready then filed a Motion to Activate Jail Sentence, Motion for Contempt and Motion for Judicial Assistance on July 19, 2013. In September 2013, the Debtor and Mr. Ready entered into a Consent Order Regarding the Payment of Arrears and Other Expenses ("Arrears Consent Order"), whereby the Debtor agreed to pay $60,840.00 to Mr. Ready in full over a term of 72 months, with a minimum payment of $200.00 a month. According to the Objection, the Debtor has made sixteen payments under the Arrears Consent Order and still owes a balance of $57,620.00; the Debtor has scheduled this debt at $57,575.00. Mr. Ready has not filed a proof of claim as of the date of this Order. The Objection refers to the Contempt Order and the Arrears Consent Order and these two orders were entered into evidence

by Mr. Ready's counsel at the hearing.  Mr. Ready did not testify; the only testimony at the hearing was from the Debtor.

## DISCUSSION

Section 1325(a)(3) of the Bankruptcy Code provides that a Court shall confirm a plan if, among other reasons, "the plan has been proposed in good faith and not by any means forbidden by law."  The Objection states Mr. Ready "objects to the confirmation of the Chapter 13 plan of the Debtor pursuant to 11 U.S.C. § 1325 on the basis that it was not proposed in good faith…" [2] Once a creditor objects to confirmation based on a lack of good faith pursuant to § 1325(a)(3), the burden of proof then shifts to the Debtor to show, by a preponderance of the evidence, that she proposed her current Chapter 13 plan in good faith.  In re Stanley, 441 B.R. 37, 40 (Bankr. M.D.N.C. 2010).

In Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982), the Fourth Circuit held that determining whether a debtor proposed a Chapter 13 plan in good faith required examination of the "totality of the circumstances" on a case-by-case basis.  The good faith test in the Fourth Circuit includes a consideration of the following factors:  (1) percentage of proposed repayment; (2) debtor's financial situation; (3) the period of time payment will be made; (4) the debtor's employment history and prospects; (5) the nature and amount of unsecured claims; (6) the debtor's previous bankruptcy filings; (7) the debtor's honesty in representing facts; (8) the nature of debtor's pre-petition conduct that gave rise to the case; (9) whether the debts would be dischargeable in a Chapter 7 proceedings; and (10) any other unusual or exceptional problems the debtor is facing.   Solomon v. Cosby (In re Solomon), 67 F.3d 1128, 1134 (4th Cir. 1995)

---

[2] The Court takes the Objection, therefore, under § 1325(a)(3) and will not address § 1325(a)(7), which provides that for a plan to be confirmed, "the action of the debtor in filing the petition was in good faith."

(citing Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982) and Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986)).

The Debtor's testimony at the hearing revealed a situation where she has struggled financially since her divorce. Her financial issues have been exacerbated by caring for her son with special needs, particularly following the car accident with Mr. Ready's parents in 2011. The Debtor's testimony was credible and she appeared sincere when she discussed her financial situation. The Debtor appeared candid about her employment history since her divorce as well as her prospects for future employment. Her employment experience and history is weak, through no intentional fault of her own, and as a result the court finds that her prospects for any type of significant increase in income in the foreseeable future appear limited.

The Debtor's petition reveals not only the debt to Mr. Ready, but a substantial debt to Kia Motors Finance in addition to credit card debt, among others. The monthly net income of $104.51 determined from the income and expenses set forth on Schedules I and J of the petition is credible; the expenses of $2,578.67 set forth in Schedule J appear modest for the Debtor and her son. The proposed plan payment of $100.00 per month is appropriate given her current income and expenses.

The nature of the Contempt Order which provides for criminal as well as civil contempt is a consideration in this case. The Debtor openly and honestly explained that because the first mortgage loan was in special forbearance, she did make the lease payments on her Lexus while not making her mortgage payment. Mr. Ready's counsel did not bring out anything on her cross-examination of the Debtor that showed anything other than confusion, struggles, and poor choices by the Debtor over finances; no malfeasance on the part of the Debtor was shown. In

addition, the Debtor showed that she was facing unusual or exceptional problems in the period of time leading up to the bankruptcy filing.

There are cases such as In re Vick, 327 B.R. 477 (Bankr. M.D. Fla. 2005), where a court has found lack of good faith by a debtor in proposing a Chapter 13 plan that would result in an elimination of divorce-related debts with minimal repayments to creditors. However, from the evidence presented to this Court, there appears to be a lack of game playing by the Debtor in her circumstances. While this Debtor may have been naïve about her finances, real property taxes, and mortgage payments subsequent to her divorce, and may have had, for various reasons, a sporadic employment history, there is no showing of a lack of good faith by the Debtor in proposing her Chapter 13 plan.

Accordingly, after consideration of the totality of the circumstances of the Debtor's case, the Court concludes that the Objection is overruled and the Debtor's proposed plan is confirmed.

## END OF DOCUMENT

PARTIES TO BE SERVED

Christy Marie Ready
15-50155 C-13


Christy M. Ready
18711 Ruffner Dr. 2-H
Cornelius, NC 28031

John Meadows
2596-C Reynolda Rd.
Winston-Salem, NC 27106

Kathryn L. Bringle
P.O. Box 2115
Winston-Salem, NC 27102-2115

Stacy C. Cordes
122 Cherokee Rd., Suite 1
Charlotte, NC 28207